UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
JUDITH LYNN HABERFELD and
HENRY HABERFELD,                                          :

                              Plaintiffs,                 :          06 Civ. 13532 (DF)

                 -against-                                :          **MEMORANDUM**
                                                                     **AND ORDER**
                                                          :
GRAMERCY TAVERN CORP.,
                                                          :
                              Defendant.
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

        In this personal injury case, before me on consent pursuant to 28 U.S.C. § 636(c),

defendant Gramercy Tavern Corp. ("Defendant") has moved for summary judgment to dismiss

the claims of plaintiffs Judith Lynn Haberfeld ("Ms. Haberfeld") and Henry Haberfeld

("Mr. Haberfeld") (collectively, "Plaintiffs").  For the reasons set forth below, Defendants'

motion (Dkt. 16) is granted, in part, and denied, in part.

**BACKGROUND**

**A.      Factual Background**

        **1.      Ms. Haberfeld's Accident and Injuries**

        This case arises out of a slip and fall at Gramercy Tavern, a New York City restaurant

and tavern owned and operated by Defendant.  (Defendant's Statement of Material Facts, dated

May 1, 2008 ("Def. Rule 56.1 Stmt.") (Dkt. 17), at ¶ 2.)  On May 10, 2005, between 6:30 and

7:00 p.m., Ms. Haberfeld and her colleague, Gianna Zajac ("Zajac"), arrived at Gramercy Tavern

to meet business clients.  (Affirmation in Support of Motion for Summary Judgment of Susan

Smodish, dated May 1, 2008 ("Smodish Aff.") (Dkt. 18), Ex. D (Transcript of deposition of

Judith Haberfeld, conducted July 17, 2007 ("Judith Haberfeld Dep.")), at 11-13.)  Upon their

arrival, hostess Molly Ryman ("Ryman") greeted them at a hostess station in front of the

establishment's main entrance, indicated that their clients had already arrived, and led

Ms. Haberfeld and Zajac to the bar area of the restaurant to meet the rest of their party.

(Smodish Aff., Ex. F (Transcript of deposition of Molly Ryman, conducted Nov. 13, 2007

("Ryman Dep.")), at 18-19.)

        More precisely, it appears that Ms. Haberfeld and Zajac followed Ryman down a hallway

that led into the "tavern" section of the restaurant (the "Tavern"), a casual dining area with 14

tables that is set apart from the restaurant's main dining room.  (Judith Haberfeld Dep., at 19.)

Ms. Haberfeld followed directly behind Ryman; Zajac directly behind Ms. Haberfeld.  (Smodish

Aff., Ex. E (Transcript of deposition of Gianna Zajac, conducted Dec. 7, 2007 ("Zajac Dep.")),

at 17.)  The floor in the Tavern is made of wood; a grill is located on one side of the Tavern; and

the other side opens up into the bar area.  (Def. Rule 56.1 Stmt., at ¶ 3; Ryman Dep., at

12-13, 19.)  After taking 12 to 15 steps towards the bar area, Ms. Haberfeld's feet slipped out

from under her; she fell on her back, legs, and buttocks, and sustained injuries.  (Judith

Haberfeld Dep., at 18-20, 54.)  Plaintiffs claim, and Defendants deny, that the floor was wet in

the location of the accident.

        There are two ways to pass through the Tavern into the bar area.  (Ryman Dep., at 43.)

The path that Ryman, Ms. Haberfeld, and Zajac used on the evening in question runs alongside a

silverware hutch, which has a counter on which wait staff store glassware, plates, and other

items (Ryman Dep., at 25.)  Moreover, during dinner hours, three pitchers of water rest on the

silverware hutch, where staff can access them, carry them to tables, and fill patrons' water

glasses.  (Smodish Aff., Ex. G (Transcript of deposition of Erin Ward, conducted Jan. 23, 2008 ("Ward Dep.")), at 22-23.)

The path to the bar area narrows as it passes the silverware hutch.  It is only three to four feet wide at that point, with the silverware hutch immediately to the right and a table immediately to the left.  (Def. Rule 56.1 Stmt., at ¶ 6; Ryman Dep., at 43.)  Ms. Haberfeld slipped and fell as she was passing through this narrow portion of the pathway and apparently landed in between the silverware hutch and the table.  (Def. Rule 56.1 Stmt., at ¶ 5.)  At the time of the incident, which was in the middle of a dinner shift, the restaurant was busy; all 14 tables in the Tavern were occupied by customers, and several people were seated at and standing near the bar.  (Ryman Dep., at 42, 44.)  Two unidentified patrons were seated at the table just to the left of where Ms. Haberfeld fell.  (Judith Haberfeld Dep., at 30.)

Ms. Haberfeld did not look at the floor before or after she fell.  (Def. Rule 56.1 Stmt., at ¶¶ 7, 9.)  As she lay injured on her back, however, she wiggled her fingers to see if she had suffered a spinal cord injury.  (Judith Haberfeld Dep., at 27-28.)  It was then, she claims, that she realized that the fingers of her left hand were resting in some sort of liquid on the floor, which she characterized as something less than a "puddle."  (Def. Rule 56.1 Stmt., at ¶ 10; Judith Haberfeld Dep., at 27-29.)  She did not examine the liquid, but she testified that it felt neither hot nor sticky.  (Judith Haberfeld Dep., at 28.)

Manager Erin Ward ("Ward") arrived soon after the fall to offer Ms. Haberfeld assistance.  (Ward Dep., at 10.)  Ward, Zajac, and others then helped Ms. Haberfeld to a cushioned bench near the front of the restaurant, where she awaited transportation to a hospital.  (*Id*., at 16-17.)  After the fall, Ms. Haberfeld told Ward that the floor was wet and insisted that she include this in an accident report that Ward was preparing.  (*Id*., at 17; Smodish Aff., Ex. H

(Incident Report, dated May 10, 2005).)  By way of affidavit, Ms. Haberfeld has now stated that her pants and knee highs were wet after she fell.  (Affidavit of Judith Haberfeld, dated May 21, 2008 ("Judith Haberfeld Aff."), at ¶ 2, attached to Affirmation in Opposition of James K. Greenberg, Esq., dated May 22, 2008  ("Greenberg Aff.") (Dkt. 20).)  Further, Ms. Haberfeld's daughter, Jacqueline Haberfeld, who met her mother at the hospital, has stated in an affidavit that Ms. Haberfeld's knee highs were wet.  (Affidavit of Jacqueline Haberfeld, dated May 22, 2008 ("Jacqueline Haberfeld Aff."), at ¶ 3, attached to Greenberg Aff.)

    Zajac testified that she witnessed the fall and immediately knelt down to assist Ms. Haberfeld.  (Zajac Dep., at 23-25.)  She then overheard an unidentified woman – one of the patrons sitting at the nearest table – state that there was water on the floor and that the woman had previously instructed wait staff to clean it up.[1]  (Id., at 28.)  Zajac, however, did not examine the floor in the vicinity of the fall to see if there was any water.  (Plaintiffs' Statement of Material Facts, dated May 21, 2008 ("Pl. Rule 56.1 Stmt.") (Dkt. 23), at ¶ 29.)   She also testified that she did not notice any water on Ms. Haberfeld's clothing.  (Zajac Dep., at 36-37.)  Similarly, Ward and Gina Demayo ("Demayo"), a server who was working that night, both claim to have examined the floor after the fall and not to have found any water.  (Ward Dep., at 17; Smodish Aff., Ex. I (Transcript of deposition of Gina DeMayo, conducted Jan. 23, 2008 ("DeMayo Dep.")), at 33.)  Indeed, Demayo testified that she was at the silverware hutch "no more than a minute before" the incident and saw no water on the floor in the area of the fall.  (Demayo Dep., at 24.)

---

[1] Ms. Haberfeld testified that she too overheard this patron, but that the patron said that she "should have had them clean it up."  (Judith Haberfeld Dep., at 25, 30.)

Ryman did testify that, after the fall, she noticed "a few drops" of water underneath a gentleman's chair in the vicinity of the accident.  (Pl. 56.1 Stmt., at ¶ 23; Ryman Dep., at 48-49.) She also testified that she had seen water on the floor in the location of the accident on prior occasions (*Id*., at 56), and Demayo conceded that she "probably" had as well (Demayo Dep., at 34).

### 2.    Relevant Wait Staff Practices

During dinner hours, three water pitchers rest on the silverware hutch.  (Ward Dep., at 23.)  Throughout the shift, wait staff periodically fill these pitchers in the back of the restaurant and then bring them to the silverware hutch where they can access them.  (Pl. Rule 56.1 Stmt., at ¶ 9.)  According to Ryman, the pitchers "perspire" (Pl. 56.1 Stmt., at ¶ 32; Ryman Dep., at 56). This presumably means that drops of condensation form on them, which can drip off onto the silverware hutch or floor.  According to Demayo, however, servers tie napkins around the pitchers to absorb condensation.  (Demayo Dep., at 12.)  Water glasses are generally not filled at the waiter station but, rather, waiters and servers take the pitchers from the silverware hutch to the respective tables and fill customers' glasses there.  (Pl. 56.1 Stmt., at ¶ 10.)

### B.    Procedural History

Plaintiffs filed a two-count Complaint in this Court on November 29, 2006.  Count I, asserted by Ms. Haberfeld, is a negligence claim.  (Complaint, filed November 29, 2006 (Dkt. 1).)  In Count II, Mr. Haberfeld seeks to recover for loss of consortium.  (*Id*.)  Defendant now moves for summary judgment as to both counts on the ground that, based on the record, Defendant cannot, as a matter of law, be found to have created or to have had actual or constructive notice of any dangerous condition that purportedly caused Ms. Haberfeld's accident.  (Defendant's Memorandum of Law in Support of Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, dated Apr. 30, 2008 ("Def. Mem.") (Dkt. 16), at 1.)  In the

alternative, Defendant contends that Mr. Haberfeld's claim should be dismissed on the separate,

independent ground that he failed to attend his noticed deposition.  (*Id.*)  At a minimum,

Defendant seeks to preclude Mr. Haberfeld from offering evidence at trial in support of his

claim.  (*Id.*)

**DISCUSSION**

## I.    SUMMARY JUDGMENT STANDARD

### A.    Fed. R. Civ. P. 56

Summary judgment is appropriate where "there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c),

*i.e.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *accord Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).  "Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).

The burden rests on the moving party to demonstrate the absence of a genuine issue of

material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and the Court must view the

record in the light most favorable to the non-movant by resolving all ambiguities and drawing all

reasonable inferences in favor of that party, *Matsushita*, 475 U.S. at 587-88; *see also Tomka v.

Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995).  Where, however, the non-movant has no

evidentiary support for an essential element on which it bears the burden of proof, summary

judgment is warranted.  *Celotex*, 477 U.S. at 322-23; *Silver v. City Univ. of New York*,

947 F.2d 1021, 1022 (2d Cir. 1991); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

B.    **Local Civil Rule 56.1**

Under this Court's rules, a party moving for summary judgment under Rule 56 must submit "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller,* 258 F.3d 62, 74 (2d Cir. 2001). Local Rule 56.1, however, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law. *Id.* Summary judgment may only be granted where the Court is satisfied that the undisputed facts, as supported by the record, "'show that the moving party is entitled to a judgment as a matter of law.'" *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

7

In this case, both parties filed the statements required by Local Rule 56.1, although parts of each statement are disputed by the opposing party. The Court, therefore, has exercised its discretion to review the full record presented, including the deposition testimony and affidavits, as well as the other documentary evidence. Under the circumstances, the Court will only cite those portions of the Rule 56.1 statements that recite undisputed facts.

## II.    PLAINTIFFS' CLAIMS

### A.    Negligence

Under New York law,[2] for liability to be imposed in a slip and fall accident the defendant must have either created the dangerous condition that caused the accident or had actual or constructive notice of the condition.[3] *Torosian v. Bigsbee Village Homeowners Association,* 848 N.Y.S.2d 452, 454 (3d Dep't 2007). To establish constructive notice, a plaintiff must show that the condition was visible and apparent and existed for a sufficient length of time prior to the accident to allow the defendant to discover and remedy it. *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837 (1986).

### 1.    Existence of a Dangerous Condition

Defendant first argues that Plaintiffs' evidence fails to create a triable issue as to whether a foreign substance existed on the floor in the location of the incident. Plaintiffs, however, have submitted direct evidence that the floor was wet in the vicinity of Ms. Haberfeld's fall.

---

[2] In this diversity action, the parties assume that Plaintiffs' claims are governed by New York law and such "implied consent . . . is sufficient to establish choice of law." *Khubani v. Ionic White, Inc.*, No. 05 Civ. 3706 (DC), 2008 U.S. Dist. LEXIS 30610, at *3 (S.D.N.Y. Apr. 3, 2008) (citation and internal quotation marks omitted).

[3] Defendant does not dispute that genuine issues of material fact exist as to other elements of Ms. Haberfeld's negligence claim.

Specifically, they have submitted Ms. Haberfeld's testimony that, after she landed on the floor, her fingers came to rest in liquid.  (Judith Haberfeld Dep., at 27-28.)  Further, Plaintiffs have offered Ryman's testimony that she discovered a few drops of water underneath a chair "in the same vicinity" as the slip and fall.  (Ryman Dep., at 48-49.)  The existence of the dangerous condition finds additional support in Ms. Haberfeld and Jacqueline Haberfeld's affidavits, which state that Ms. Haberfeld's pants and/or knee highs were wet after she fell and lay on the floor.[4] (Judith Haberfeld Aff., at ¶ 2; Jacqueline Haberfeld Aff., at ¶ 3; *see Kesselman v. Lever House Restaurant*, 816 N.Y.S.2d 13, 15 (1st Dep't 2006) (denying summary judgment in slip and fall case where plaintiff claimed that her pants were wet after she fell).)  Moreover, Ms. Haberfeld requested that Ward note that the floor was wet in the accident report.  Although there is conflicting evidence in the record, this direct and circumstantial evidence suffices to create a genuine issue of material fact as to whether a dangerous condition existed.

### 2.    Creation of the Dangerous Condition

Defendant next contends that the evidence, viewed in the light most favorable to Plaintiffs, does not support a finding that Defendant created the alleged dangerous condition. The Court, however, does not agree, as circumstantial evidence in the record permits the

---

[4] Defendant asks this Court to disregard the affidavits of Judith and Jacqueline Haberfeld, on the ground that the affidavits purportedly contradict the affiants' prior deposition testimony. Yet, while "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996), this is not the situation presented here.  It is true that, at their depositions, neither deponent testified that Ms. Haberfeld's pants and knee highs became wet, but they did not deny this fact either.  Rather, the deposition transcripts show that neither deponent was specifically asked about this by counsel.  As the affidavits in question do not contradict, but merely supplement the deponents' testimony, the Court will consider them.

inference that Gramercy Tavern employees created the dangerous condition by spilling water on the floor in front of the silverware hutch.

It is clear from the discovery record that Ms. Haberfeld slipped directly in front of the silverware hutch – likely in the space where wait staff stands when retrieving something from the hutch.  During dinner hours, water pitchers are kept on the silverware hutch, and servers continuously remove and replace them to fill water glasses and refill the pitchers.  (Ward Dep., at 23.)  The record reflects that the water pitchers tend to "perspire."  (Ryman Dep., at 56.)  The record further reflects that the restaurant was busy at the time of Ms. Haberfeld's fall; thus, a jury could reasonably infer that servers would have made frequent trips to and from the silverware hutch to take or replace the pitchers, creating the potential for dripping or spillage.  In fact, Demayo testified that the restaurant goes through "a lot" of pitchers during dinner. (Demayo Dep., at 38.)  Finally, as noted above, the record contains direct evidence that the floor was wet where Ms. Haberfeld fell, and Defendant's own employees testified that they had actually or probably observed water on the floor in that location before.  (*See supra* Point II (A)(1); Ryman Dep., at 56; Demayo Dep., at 34.)

This evidence creates a triable issue as to whether Gramercy Tavern employees spilled water from the pitchers or otherwise allowed condensation to drip to the floor and thereby created the alleged dangerous condition.  *See Mete v. GMRI, Inc.*, 836 N.Y.S.2d 609 (1st Dep't 2007) (finding that defendant was not entitled to summary judgment on slip and fall claim because accident happened next to service bar with soda dispenser and ice machine and area was heavily trafficked by wait staff carrying beverages); *Kesselman*, 816 N.Y.S.2d 13 (denying summary judgment to defendant restaurant on slip and fall claim because incident took place in

"center of activity" for defendant's staff, sink used to fill pitchers was located nearby, and manager testified that water could spill in that location).

### 3.    Notice of the Dangerous Condition

Defendant also maintains that the evidence presented does not support a finding that any of its employees had actual or constructive notice of the alleged dangerous condition prior to the accident.  The only evidence this Court can find that would suggest that Defendant knew about the dangerous condition before Ms. Haberfeld fell is Zajac's testimony that she overheard a woman state that there was water on the floor and that the woman had told wait staff to clean it up.  The unknown woman's statement, however, is inadmissible hearsay, and Plaintiffs have offered no reason why this Court should consider it on this motion.  Accordingly, this evidence cannot be used to defeat summary judgment in Defendant's favor on the issue of actual notice. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir.2000) (noting that courts may not consider inadmissible evidence when considering motion for summary judgment); *Schweit v. City of New York*, No. 04 Civ. 5462 (FB) (LB), 2007 U.S. Dist. LEXIS 28392, at *22 (E.D.N.Y. Apr. 17, 2007) (inadmissible hearsay "may not be relied upon to defeat a summary judgment motion").

As for constructive notice, Plaintiffs must establish that the condition was visible and apparent and existed for a length of time before the accident sufficient to allow Defendant to discover and remedy it.  *Gordon*, 67 N.Y.2d at 837.  Here, Plaintiffs have submitted nothing to evidence that the alleged dangerous condition existed on the floor for any length of time.  In fact, Demayo's uncontroverted testimony indicates that the floor was dry one minute before the accident.  *See Mackinney v. Burger King Corp.*, No. 05 Civ. 188 (DRH)(AKT), 2006 U.S. Dist. LEXIS 87515 (E.D.N.Y., Dec. 4, 2006) (entering summary judgment for defendant in slip and

11

fall case where defendant's employees were in the area of accident 15 and five minutes beforehand and stated that floor was dry).  Consequently, Defendant is entitled to partial summary judgment on the issue of notice.  While trial of Ms. Haberfeld's negligence claim is warranted, trial will proceed only on the question of whether Defendant itself created a dangerous condition that made Ms. Haberfeld fall.

### B.     Loss of Consortium

Defendant argues that, even if Ms. Haberfeld's negligence claim (Count I) survives summary judgment, Mr. Haberfeld's claim (Count II) should be dismissed as a sanction for his failure to appear at his noticed deposition.  (Def. Mem., at 20-25.)  In the alternative, Defendant asks the Court to sanction Mr. Haberfeld by precluding him from introducing evidence at trial in support of this claim.  Plaintiffs do not deny that Mr. Haberfeld did not appear for his duly noticed deposition.  They argue, however, that he should be excused from giving deposition testimony because a loss of consortium claim can be proven without the plaintiff's testimony.  (Pl. Mem., at 8-9.)

Plaintiffs' argument entirely misses the mark.  Regardless of what evidence may be required to prove a loss of consortium claim, Defendant is entitled to obtain pre-trial deposition testimony on issues relevant to Mr. Haberfeld's claim.  Indeed, Plaintiffs themselves point out that there are "[v]arious factors" that may support an award for loss of consortium, including:

> the existence of a valid and continuing marriage and the presence of the elements of affection, companionship, society, and solace and the loss thereof, the seriousness and length of the injured spouse's hospitalization or disability, the necessity of caring for [the] injured spouse or hiring someone else to do it, [the] adverse impact on [the parties'] sexual relationship, injury-induced, negative behavior toward [the] spouse, and the inability to engage in activities with the injured spouse that both parties had previously enjoyed.

12

(Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, undated, at 9 (Dkt. 21) (internal citation omitted).)  Further, Plaintiffs argue that Mr. Haberfeld is entitled to relief because, among other things, he can no longer rely on Ms. Haberfeld to organize his life and attend to his daily needs.  (*Id.*)  Whether Plaintiffs can prove this without Mr. Haberfeld's testimony does not matter.  The fact remains that he has personal knowledge of the effect that Ms. Haberfeld's injury has had on his life, and Defendant is entitled to depose him to explore his knowledge on that issue.

Rather than move to compel Mr. Haberfeld to appear for a deposition, however, Defendant waited until the discovery period had closed to ask this Court to impose sanctions. While it is true that the Court received no timely motion from Plaintiffs for a protective order, the Court also received no motion from Defendant to compel the testimony, which could have been made once it became clear that Mr. Haberfeld would not testify.  Moreover, Defendant's counsel does not claim to have engaged in the requisite good faith conference with Plaintiffs' counsel prior to raising this discovery dispute.  Under all of these circumstances, this Court declines to sanction Mr. Haberfeld at this time.  Rather, this Court will order Mr. Haberfeld to appear for deposition on a date certain, to be agreed by the parties, during the month of April, 2009.  If Mr. Haberfeld fails to appear for his Court-ordered deposition, the Court will then consider imposing sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, including but not limited to the dismissal of Mr. Haberfeld's claim.

The Court notes, however, that, by mentioning that Mr. Haberfeld suffers from certain cognitive impairments (*see* Greenberg Aff., at ¶ 14; *see also* Smodish Aff., Ex. K (Transcript of deposition of Jacqueline Haberfeld, conducted Apr. 24, 2008) ("Jacqueline Haberfeld Dep."), at

13

35-36 (testifying that Mr. Haberfeld has had a number of strokes which have caused residual neurological effects[5])), Plaintiffs may be taking the position that Mr. Haberfeld is not competent to testify.  If, in fact, it is the view of Plaintiffs or their counsel that Mr. Haberfeld is incompetent, then Plaintiffs' counsel is directed to show cause, no later than two weeks from the date of this Order, why this Court should not hold a hearing to determine whether a guardian *ad litem* should be appointed for Mr. Haberfeld, pursuant to Rule 17(c)(2) of the Federal Rules of Civil Procedure.  If Plaintiffs take the position that Mr. Haberfeld is not competent to testify, then his deposition shall be stayed pending decision by the Court on the issue of his competence.

---

[5] Among other things, Jacqueline Haberfeld testified that her father has difficulty understanding linear stories, has difficulty reading, and suffers from speech problems and other cognitive impairments.  (Jacqueline Haberfeld Dep., at 36.)

## CONCLUSION

For all of the foregoing reasons, it is hereby ORDERED that:

(1)     Defendant's motion for summary judgment in its favor (Dkt. 16) is granted as to Count I of Plaintiffs' Complaint, insofar as it alleges that Defendant had actual or constructive notice of the dangerous condition that allegedly caused Ms. Haberfeld to fall.

(2)     Defendant's motion for summary judgment is otherwise denied.

(3)     Plaintiffs' counsel is directed either: (a) to produce Mr. Haberfeld for deposition on a date during the month of April 2009, to be agreed by the parties and "so ordered" by the Court; or (b) show cause no later than two weeks from the date of this Order why a hearing should not be conducted to determine whether a guardian *ad litem* should be appointed for Mr. Haberfeld, pursuant to Rule 17(c)(2) of the Federal Rules of Civil Procedure.

Dated:  New York, New York
        March 23, 2009

                                          SO ORDERED

                                          DEBRA FREEMAN
                                          United States Magistrate Judge

Copies to:

Susan D. Smodish, Esq.
McElfish Law Firm
350 Park Avenue, Suite 1729
New York, New York 10118

James K. Greenberg, Esq.
363 Seventh Avenue, Suite 400
New York, New York 10001